[Cite as *State v. Taylor*, 2014-Ohio-3820.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100738**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## CHARLES J. TAYLOR, JR.

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-573594-A

**BEFORE:** Celebrezze, P.J., Blackmon, J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** September 4, 2014

**ATTORNEY FOR APPELLANT**

Susan J. Moran
55 Public Square
Suite 1616
Cleveland, Ohio   44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:    Carl Sullivan
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

FRANK D. CELEBREZZE, JR., P.J.:

**{¶1}** Defendant-appellant, Charles J. Taylor, Jr., appeals from his conviction for failure to comply with a police order. After a careful review of the record and relevant case law, we affirm appellant's conviction.

## I. Procedural and Factual History

**{¶2}** On May 13, 2013, appellant was indicted and charged with one count of failure to comply in violation of R.C. 2921.331(B), a felony of the third degree. On October 21, 2013, the matter proceeded to a jury trial. The following evidence was presented at trial.

**{¶3}** Ohio State Highway Patrol Trooper Chad Schell testified that he was monitoring traffic in his patrol vehicle with his partner, Trooper Larry Roberts, when he observed a motorcycle with a male and female passenger approach from the rear. As the motorcycle passed, Trooper Schell noticed that the registration tag on the motorcycle's license plate appeared to be expired.

**{¶4}** Officer Schell entered the motorcycle's license plate information into his Mobile Data Terminal System ("MDTS") and discovered that the license plate had expired in 2010. Based on this information, Officer Schell attempted to conduct a traffic stop of the motorcycle. However, the driver failed to stop and led police on a chase traveling in excess of 50 m.p.h. in a 25 m.p.h. zone. The chase continued until the driver "dumped the motorcycle to the ground" and attempted to flee the scene on foot.

The motorcycle fell on the female passenger's leg, leaving her trapped under the bike as the driver fled.

**{¶5}** Officer Schell testified that he pursued the driver on foot. During the pursuit, Officer Schell observed the driver take off his helmet and throw it to the ground. Officer Schell testified that he was briefly able to see the driver's face. Officer Schell made an in-court identification of appellant as the driver of the motorcycle and the individual he chased on March 29, 2013.

**{¶6}** When Officer Schell was unable to apprehend appellant on foot, he was picked up by Officer Roberts, and they returned to the female passenger, later identified as Mya Walker. Officer Schell learned that while he pursued appellant, Officer Roberts briefly questioned Walker and developed further information regarding the identity of the driver. According to Officer Roberts, Walker stated that the driver was her boyfriend and his name was "Charles Taylor." Walker further stated that the driver's date of birth was January 5, 1976. Using information provided by Walker, Officer Roberts accessed appellant's information through his Mobile Data Terminal and located a BMV image of appellant. Officer Schell confirmed that the photo of appellant shown to him by Officer Roberts was the individual he chased.

**{¶7}** During Officer Schell's direct examination, the state introduced the dash camera video and audio captured during the March 29, 2013 incident. The dash camera showed Officer Roberts conducting a short interview with Walker, who stated that the driver of the motorcycle was "her baby's father Charles Taylor."

{¶8} Mya Walker was called to testify as a witness for the state. However, in contradiction of her statements to Officer Roberts at the scene, Walker testified that she did not know an individual by the name of "Charles Taylor" and that she did not know the identity of the man driving the motorcycle on March 29, 2013. Walker testified that she got on the motorcycle with a random person to make a boyfriend named "Antwon" jealous. Walker stated that she did not know what the driver of the motorcycle looked like because he was wearing a helmet. Walker admitted that she told officers that "Charles Taylor" was the driver of the motorcycle on the day of the incident. However, Walker explained that she made up the name "Charles Taylor" and lied to police about the identity of the driver because she was "scared."

{¶9} On October 23, 2013, the jury found appellant guilty of the single count of failure to comply. At sentencing, the trial court ordered appellant to serve 24 months in prison.

{¶10} Appellant now brings this timely appeal, raising three assignments of error for review:

> I. The trial court erred in permitting the state to impeach its own witness with a prior inconsistent statement and in admitting that as substantive evidence in violation of the Ohio Rules of Evidence and in violation of appellant's Due Process Rights under the Fourteenth Amendment to the United States Constitution.
> II. The trial court erred in permitting the introduction of impermissible hearsay which denied the appellant a fair trial in violation of the Ohio Rules of Evidence and in violation of the Due Process Clause of the Fourteenth Amendment and the Confrontation Clause of the Sixth Amendment to the United States Constitution.
>
> III. Appellant's conviction is against the manifest weight of the evidence.

## II. Law and Analysis

### A. Impeachment Evidence

{¶11} In his first assignment of error, appellant argues that the trial court erred in permitting the state to impeach its own witness, Mya Walker, with a prior inconsistent statement and in admitting that testimony as substantive evidence.

{¶12} Generally, a trial court enjoys broad discretion in admitting or excluding evidence, and a reviewing court will not reverse that decision absent a finding of abuse of discretion. *State v. Williams*, 7 Ohio App.3d 160, 454 N.E.2d 1334 (3d Dist.1982), paragraph one of the syllabus. The term "abuse of discretion" implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). "The term has been defined as 'a view or action that no conscientious judge, acting intelligently, could honestly have taken.'" *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, ¶ 130, quoting *State ex rel. Wilms v. Blake*, 144 Ohio St. 619, 624, 60 N.E.2d 308 (1945).

{¶13} Under Evid.R. 607(A), a party may not impeach its own witness with a prior inconsistent statement without showing surprise and affirmative damage. Surprise is shown when a witness's trial testimony is materially inconsistent with the witness's prior statements, and counsel had no reason to believe that the witness would recant when called to testify. *State v. Holmes*, 30 Ohio St.3d 20, 23, 506 N.E.2d 204 (1987). To show affirmative damage under Evid.R. 607(A), the inconsistent testimony must

"contradict, deny, or harm that party's trial position * * *." *State v. Stearns*, 7 Ohio App.3d 11, 15, 454 N.E.2d 139 (8th Dist.1982).

{¶14} In the case at hand, Walker was arrested on a bench warrant and brought to the court to provide testimony. At trial, Walker provided testimony that was in direct contradiction to the statements she made to officers at the scene of the March 29, 2013 incident. Significantly, Walker stated that she lied to the police when she stated that the driver of the motorcycle was Charles Taylor. She testified that she does not know Taylor, and he was not the individual driving the motorcycle.

{¶15} There is no dispute that Walker's testimony at trial was materially inconsistent with the statement she gave to police at the scene of the incident. However, appellant argues that the element of surprise was not satisfied because the state had reason to believe Walker would recant her testimony because she was forced to testify via a bench warrant. In our view, this fact alone does not preclude a finding of surprise. Although Walker was forced to testify, the state had no basis to believe she would disclaim ever knowing appellant on the stand, particularity where her version of events was consistent during all conversations with the state prior to her direct examination. *See In re A.C.*, 11th Dist. Ashtabula No. 2013-A-0024, 2014-Ohio-640. ¶ 53 ("Where there is no evidence to show that the state was aware that the witness would testify in a different manner than her prior statements, the element of surprise is established").

{¶16} Moreover, Walker's statement that appellant was not the driver of the motorcycle was clearly in contradiction of the state's trial position. Thus, we cannot

conclude that the court abused its discretion by finding surprise and affirmative damage and allowing the state to impeach Walker under Evid.R. 607(A).

{¶17} Appellant's first assignment of error is overruled.

## B. Hearsay Testimony

{¶18} In his second assignment of error, appellant argues that the trial court erred in permitting the introduction of impermissible hearsay evidence.

{¶19} Hearsay is defined in Evid.R. 801 as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 802 governs the admissibility of hearsay evidence and indicates that hearsay is inadmissible in the absence of an exception.

{¶20} A trial court possesses broad discretion with respect to the admission of evidence, including the discretion to determine whether evidence constitutes hearsay and whether it is admissible hearsay. *State v. Essa*, 194 Ohio App.3d 208, 2011-Ohio-2513, 955 N.E.2d 429, ¶ 124 (8th Dist.), citing *State v. Graves*, 9th Dist. Lorain No. 08CA009397, 2009-Ohio-1133, ¶ 4 (overruled on other grounds).

{¶21} In the case at hand, appellant argues that the trial court erred in permitting Officer Roberts to testify about what Walker stated to him at the scene of the incident. Particularly, appellant challenges Officer Roberts's testimony that Walker told him appellant's date of birth, that she was dating appellant, and that appellant was the driver of the motorcycle and the individual who fled from the scene.

{¶22} In overruling appellant's hearsay objection, the trial court relied on Evid.R. 803(1), which permits the admission of statements "describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter unless circumstances indicate lack of trustworthiness." Therefore, of central concern to the admission of statements of present sense impression is the temporal proximity of statements to the event at issue. This is so because "[t]he principle underlying this hearsay exception is the assumption that statements or perceptions describing the event and uttered [closely in time] to the event, bear a high degree of trustworthiness." *Graves* at ¶ 4, quoting *Cox v. Oliver Mach. Co.*, 41 Ohio App.3d 28, 37, 534 N.E.2d 855 (12th Dist.1987).

{¶23} The key to the statement's trustworthiness is the spontaneity of the statement — it must be either contemporaneous with the event or be made immediately thereafter. *Essa, supra*, at ¶ 126. A minimal lapse of time between the event and statement indicates an insufficient period to reflect on the event perceived; the declarant's reflection would detract from the statement's trustworthiness. *State v. Ellington*, 8th Dist. Cuyahoga No. 84014, 2004-Ohio-5036, ¶ 10. "When the statement is the 'product of reflective thinking rather than spontaneous perception,' Evid.R. 803(1) does not apply." *Graves* at ¶ 4, citing *State v. Simmons*, 9th Dist. Summit No. 21150, 2003-Ohio-721, ¶ 35-36.

{¶24} In the instant case, the record supports the trial court's position that Walker's identification of appellant as the driver of the motorcycle qualifies as a present

sense impression. The statement was made within minutes of the event and reflects Walker's perception of, and involvement in, the event without time for reflection. Based on the circumstances presented, this court cannot find that the trial court abused its discretion in admitting Walker's statements as substantive evidence. Officer Roberts's testimony was admissible pursuant to the present-sense-impression exception to the hearsay rules of evidence.

{¶25} Appellant's second assignment of error is overruled.

### C. Manifest Weight

{¶26} In his third assignment of error, appellant argues that his conviction is against the manifest weight of the evidence.

{¶27} In reviewing a claim that a verdict is against the manifest weight of the evidence, this court considers the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and, in considering conflicts in the evidence, determines whether the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *See State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). In doing so, we remain mindful that the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. This gives the trier of fact the authority to "believe or disbelieve any witness or accept part of what a witness says and reject the rest." *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964). The

discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. *Thompkins, supra*, at 387.

{¶28} Appellant was convicted of violating R.C. 2921.331(B), which provides that "[n]o person shall operate a motor vehicle so as to willfully elude or flee police after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop."

{¶29} In challenging the weight of the evidence supporting his conviction, appellant contends that the state failed to present credible evidence that he was the driver of the motorcycle, particularly where the only eyewitness, Mya Walker, testified that she did not know appellant and Officer Schell admitted that he only managed to see the driver's face for a brief moment.

{¶30} After examining the entire record, weighing all the evidence and all reasonable inferences, we are not able to conclude that the jury clearly lost its way in finding appellant guilty of failing to comply with a police order. The jury, as the trier of fact, was in the best position to weigh the credibility of the witnesses. While appellant argues that Walker and Officer Schell's testimony contained material inconsistencies, the jury was free to give substantial weight to Walker's on-scene statements identifying appellant as the driver and Officer Schell's in-court identification of appellant as the driver based on his brief observation of appellant's face during his pursuit of the fleeing driver. Accordingly, appellant's conviction is not against the manifest weight of the evidence.

**{¶31}** Appellant's third assignment of error is overruled.

**{¶32}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., PRESIDING JUDGE

PATRICIA A. BLACKMON, J., and
EILEEN T. GALLAGHER, J., CONCUR